<table>
<tr><td>53</td><td>101</td></tr>
<tr><td>130a</td><td>206</td></tr>
<tr><td>53</td><td>101</td></tr>
<tr><td>70</td><td>154</td></tr>
</table>

GEORGE L. PRATT, PLAINTIFF, *v.* THE DWELLING–HOUSE MUTUAL FIRE INSURANCE COMPANY, OF ORLEANS, NIAGARA AND MONROE COUNTIES, N. Y., DEFENDANT.

*Insurance — by the secretary of a company, of his own property — invalidity of — what notice necessary to establish a ratification.*

A director and secretary of a county co-operative insurance company filled out and signed an application for an insurance of $500 "on his wine-house and cellar," and of $1,500 "on his personal property kept stored therein," and as a member of the executive committee signed his own name to the certificate of approval indorsed on the application, and afterwards obtained to such approval the signature of the vice-president, who was also a member of the executive committee, and who signed it on the highway where he met the secretary. Under this application the secretary issued to himself a policy of insurance for $2,000 upon a blank already signed by the vice-president, which he countersigned himself.

By the by-laws of the company policies might be issued provisionally, but it was provided that they should be submitted thereafter to the executive committee

for examination and approval. This was not done in this case, although two stated meetings of the executive committee had been had prior to the time of the fire, to recover the damages resulting from which an action was brought by the secretary.

*Held,* that the policy issued by the secretary, as agent of the insuring company, to himself as the insured, had no valid inception as a contract and could not be made the basis of a recovery in the action.

That he was not in a position to take advantage of the provision of the by-laws of the company, to the effect that "applications for insurance, taken by a person duly authorized, shall take effect at noon of the date of the same, provided the premium is actually paid. The property shall be held insured until the applicant is notified by the secretary of its modification or rejection," for the reason that, although authorized in general to receive applications for insurance, the secretary could not, as secretary, properly take an application from himself, any more than he could approve his own application or issue his own policy; and for the further reason that the secretary was guilty of a neglect of duty, as secretary and as a member of the executive committee, in withholding the application from the attention of the committee for their action, and he could not, by his own fault, gain an extension of the term of his insurance.

That the approval of the vice-president was not sufficient: 1. Because not given at a meeting of the committee. 2. Because the secretary being incompetent to act upon his own application, it did not receive the approval of a majority of the committee.

That the fact that the application for the insurance was on its files, and the policy had been entered in its records, might constitute constructive notice to the company of the existence of both for some purposes, but that such constructive notice was not sufficient to charge a party with a ratification of the void contract, as actual notice, and a full knowledge of all the facts, were necessary conditions of the ratification.

MOTION by the plaintiff for a new trial on a case and exceptions after a trial at the Orleans Circuit before the judge and a jury, on the 5th day of June, 1888, at which the court, on motion of the defendant, granted a nonsuit and dismissal of plaintiff's complaint, and ordered that the exceptions taken by the plaintiff upon the trial of the action, and to the granting of said nonsuit, be heard in the first instance at the General Term of the Supreme Court, and that the entry of judgment be in the meantime suspended.

The action was brought to recover a loss by fire upon property covered by a policy of insurance alleged to have been issued by the defendant in favor of the plaintiff.

*F. Brundage,* for the motion.

*S. E. Filkins,* opposed.

Dwight, J. :

The defendant is a "county co-operative insurance company," organized under chapter 362 of the Laws of 1880, as amended by chapter 171 of the Laws of 1881. The plaintiff was one of the original incorporators of the company, and was one of its directors and its secretary from its incorporation until January, 1886.

By its by-laws (art. 2, § 1) the powers of the company are vested in its board of twelve directors. By section 8 of the same article the president, vice-president and secretary constitute an executive committee, possessing and exercising all the powers of the board of directors when the latter is not in session; that committee holds stated meetings, quarterly, on the second Saturdays of January, April, June and October; and at each stated meeting it is their duty "to examine and approve all applications upon which policies have been written during the quarter next preceding and cancel or modify all policies which they do not approve." By section 7 of the same article "every application (for insurance) must receive the approval of one of the executive committee before a policy can be issued."

On the 11th day of July, 1885, the plaintiff, being such director and secretary of the defendant, filled out and signed an application for an insurance of $500, "on his wine-house and cellar," and of $1,500, "on his personal property kept stored therein;" he signed his own name as member of the executive committee to the certificate of approval indorsed on the application, and afterwards procured the signature of George Brown, who was vice-president and one of the executive committee, to the same certificate. Brown was driving on the highway at the time. He testifies that he was returning home from a meeting of the executive committee, at which he had met the plaintiff, and that, on the highway, the latter presented the application to him, saying it was one which he, Brown, had overlooked; that he (plaintiff) had signed it and it was all right. He testifies that he did not examine the application further than to see that the plaintiff had signed the approval, and that he signed it without knowing whose application it was. On the other hand, the plaintiff testifies that he told Brown it was his, the plaintiffs' application, and that Brown looked at the contents of the paper before signing the approval. The 11th day of July, 1885, which is the

date of the application, was also the date of the second Saturday of July of that year, which was the time fixed by the by-laws for one of the stated quarterly meetings of the committee. It is not asserted that the plaintiff presented his application to the committee at its meeting on that day. Upon this application, thus made and approved, the plaintiff, at some time, issued to himself a policy of $2,000, corresponding in number (No. 747), and in the description of the property insured, to the application. The policy bears no date, but purports to insure the plaintiff for the term of three years from the 11th day of July, 1885, which was the date of the application. It was filled out by the plaintiff on a form in his possession as secretary, already signed by the vice-president, and he countersigned it himself as secretary.

By section 5 of article 2 of the by-laws of the company it is provided that the secretary shall write and countersign all policies of insurance; * * * he shall act as general agent of the company during his term of office, and may canvass and receive applications for insurance, and receive such fees and commissions as may be paid to any other agents of the company." On the secretary's book the plaintiff charged himself, under date of July 11, 1885, with the amount of the premium payable on the application ($10) and credited himself with "commissions on do. $1.00." At what date he wrote the policy for himself does not appear; but it does appear that at neither of the stated meetings of the executive committee, in October or January following the date of the application, was it submitted to the executive committee for examination and approval, as required by section 8 of article 2 of the by-laws as above quoted. That the policy had been written before the quarterly meeting in January appears from the testimony of the plaintiff, that on the second day of December he wrote on the face of both the policy and the application a memorandum, " Loss, if any, on the buildings payable to S. Salisbury, as his mortgage interest may appear." There is every reason to suppose that the policy was written immediately after the so-called approval by Brown ; and the allegation of the complaint is that it was issued on or about the 11th day of July, 1885. If so, there were two stated meetings of the executive committee, while the plaintiff was a member of it, at which it was his duty to present his application for examination and approval by

the committee, and his policy for cancellation or modification if not approved by them. As we have seen, a policy might be issued upon the approval of the application by a single member of the executive committee; but such issuance is clearly provisional and subject to the action of the executive committee at its next stated meeting.

We think the statement of facts, so far made, sufficient to demonstrate that the policy issued by the plaintiff, as agent of the insurer, to himself as the insured, had no valid inception as a contract, and cannot be the basis of a recovery by the plaintiff. It is a truism of the law that no man can make a valid contract with himself as the agent of another; it is equally impossible that a trustee should secure a benefit to himself by the neglect or violation of his duty to his *cestui que trust*; and both of these propositions must be negatived in order to maintain the validity and binding force of the policy of insurance in this case. But the plaintiff contends that, granting the invalidity of the policy, he may still insist upon a contract of insurance effected by the acceptance of his application. In support of this proposition he refers to a provision of the by-laws of the company, contained in section 7 of article 5, which is as follows: "All applications for insurance taken by a person duly authorized shall take effect at noon of the date of the same provided the premium is actually paid. The property shall be held insured until the applicant is notified by the secretary of its modification or rejection." But the claim of the plaintiff, based upon this provision, is subject to the same objections as those which we sustain to his claim on the policy. In the first place, the secretary, though authorized in general to receive (or take) applications for insurance, cannot properly take an application from himself any more than he could approve his own application or issue his own policy. In taking, accepting or receiving the application he acts for the company, and he cannot act for himself and for the company in the same transaction. There was no reason in the necessity of the case for his taking his own application, because any one of the twelve directors of the company were authorized to receive it. (By-laws, art. 2, § 7.)

But, if it be contended that the approval of the application

by Brown was the taking referred to, or in any way satisfied the requirement of the provision quoted, and thus an insurance was effected from the date of such approval, how long did such insurance continue in force? The language of the provision is "until the applicant is notified of its modification or rejection," *i. e.*, the modification or rejection of his application; and by whom? Clearly by the executive committee at its next quarterly meeting. But we have already seen that the plaintiff was guilty of a neglect or violation of his duty as secretary and member of the executive committee in withholding the application from, or failing to bring it to the attention of, the committee for their action at any meeting after the issuance of the policy; and he could not, by his own fault, gain an extension of his own insurance. And if it were contended, as we do not understand it is, that the approval of the application by the plaintiff and Brown, on the eleventh of July, constituted the action of the executive committee required by the provision of the by-laws last referred to, the answer to the contention would be two-fold: First. That such pretended action was not taken at a meeting of the committee, but after the meeting had dissolved. Second. That, upon the principles here recognized, the plaintiff was disqualified to act upon his own application, and, therefore, the approval did not receive the assent of a majority of the committee.

Neither do we find in the case facts to support the contention of the plaintiff that the contract of insurance, though invalid in its inception, was ratified by the acts of other officers of the company. There is no evidence that any other officer of the company knew of the existence of the policy until after the fire, which occurred August 7, 1887. Chamberlain was elected secretary in January, and the books and papers of the company were turned over to him, but his attention was not called to the application or record of the policy of the plaintiff, and he testified that he never knew or heard of either of them until after the fire. So far as the evidence shows, the same is true of the other officers of the company, unless it were to be found that Brown knew of the application in July; but, if that were true, he had a right to suppose, from the fact that it was not presented to the executive committee at the next, or any subsequent meeting, that no policy had been issued upon it. The fact that the application was on its files, and the policy entered in its

records, might constitute constructive notice to the company of the existence of both, for some purposes; but constructive notice is not sufficient to charge a party with the ratification of a void contract. Actual notice and full knowledge of all the facts are necessary conditions of a ratification.

One other ground upon which the plaintiff seeks to avoid the objections to his policy is that of waiver, on the principle recognized in the case of *Titus* v. *The Glens Falls Insurance Company* (81 N. Y., 410). In that case a provision of the policy required the insured, at the request of the company, to submit to an examination on oath concerning his loss and its circumstances, under the penalty of forfeiture of his policy. There it was held that to insist upon and enforce such a provision was to affirm the validity of the contract in which it was contained. In this case there was a provision of the by-laws that members sustaining loss should "give any information required by the adjusting officers, and submit to examination under oath," but no condition of the avoidance of the policy for refusal to do so was attached to it, and the provision of the by-laws, such as it was, was not insisted upon by the officers of the company. Some questions were asked by them and answered by the plaintiff in respect to the particulars of his loss, but he was not required to submit to an examination under oath. Blanks for proof of loss were furnished to him at his request, and all the steps towards the establishment of his claim were voluntary on his part.

We find no evidence of facts in the case which preclude the defendant from insisting upon the invalidity of the alleged contract of insurance; and we are of the opinion that the court below was right in holding that such alleged contract was invalid, and in granting the defendant's motion for a nonsuit.

The plaintiff's exceptions should be overruled, and judgment ordered for the defendant, dismissing the plaintiff's complaint.

All concurred.

Motion for new trial denied, and judgment ordered for the defendant on the verdict.